Madam Clerk, please call the next case. 1-5-0-4-7-3, Darren Skerka v. City of Chicago. Counsel, you may proceed. Good afternoon, Justices. My name is Anthony Kuda, Counselor. What I'd like to start out as the standard review in this case could either be a de novo or it's fully contrary to the manifest weight of the evidence. Counsel, what I'd like to start out in this case is your brief. Can you mind telling me what the issues in this case are and where we'll find them in your brief? Well, it should have been stated in the first part of the brief. Certainly not in the argument section. There's no statement as to what the issues are. There's no individual analysis of each of the issues. You've got issues here that weren't even raised before the Commission, and you have no business being here. Well, you state the issue presented is regarding accident, causation, medical, etc. are contrary to the weight of, manifest weight of the evidence. One would expect that to be presented in the form of one, two, three, four, five issues. You're right. I apologize, and I wish I had an opportunity to redo that. Well, redo it. You did a cut and paste of your statement of exceptions before the Commission. That's what this brief is. I read the statement of exceptions. I understand it, but the facts are that we clearly put forth what the issue is and why. Counsel, you've got to understand something. We are not a repository for general statements of error, placing upon us the burden to go research it for you or to search the record to find what it's based on. I understand that, and I apologize if it wasn't clear. Let me start out backwards. Let me start out backwards. Can you tell me how it is we would address the question of whether your client was entitled to vocational rehabilitation or on the record you specifically said you reserved it for the permanency hearing? That's because the arbitrator wouldn't take any evidence. The arbitrator said she wouldn't consider it at the time in the record. So how can we determine if it's not been considered by the Commission and it wasn't raised before the Commission? If the arbitrator doesn't give you an opportunity to bring that into – here's what the arbitrator – Wait a minute. Why couldn't – did you have no opportunity to allege you were entitled to vocational rehabilitation? Well, here's what the arbitrator did was she said she was taking it under advisement, and then she allowed me – the interesting thing about it was the arbitrator did allow the vocational rehabilitation report of Mr. Blumenthal to be admitted into evidence, as well as the job searches, as well as the functional capacity. So we clearly established that this gentleman – Counsel, did you ever raise the issue of vocational rehabilitation in your statement of exceptions before the Commission? I believe we did. The answer to that question is no, you didn't. Now, the next question that I have is, did you ever raise the issue in your – before the Commission that you were entitled to penalties? You ever file a petition for penalties in this case? No, you didn't, and yet you raise it on appeal, and we've got to address it. Counsel, we're simply not a repository for a regurgitation of potential issues that may come up when this case goes for a permanency hearing. It's unfair to us, and it's unfair to write a brief like this. I'll keep that in mind, but – I wish you would. But again, the appellate court has previously stated in the Beauchene case, while the courts are not easily moved to set aside Commission decisions on factual questions, the courts should not hesitate to do so where the clearly evident and plain and disputable weight of the evidence compels an apparent opposite conclusion. We understand what our – Well, what I'm suggesting – Stop. Stop. Sure. Why is it against the manifest weight of the evidence on causation? I'm glad you asked that question. Thank you. I've got seven reasons why it's against the manifest weight of the evidence. Number one, there are six doctors that examined this individual. Two city doctors early on from Mercy, Dr. Ali and Dr. Diadula. They – both doctors examined him immediately after this car crash that took place on city time while my client was working. Both Diadula and Ali said this is a causally related injury and he has treatment. In fact, one of the doctors said he needs to have an MRI. The next two doctors are Dr. Lorenz. Was that the May 18, 2013 examination at Mercy Works? Yes, sir. Did your claimant deny any history of neck injury or prior surgery? The records say he did. Well, he said he denied prior surgery. He had a history of neck injury also. Then Ali makes the observation that there is mild to moderate tenderness over the muscles, full range of motion of the neck with some discomfort. An X-ray of the cervical spine does not show any fracture or dislocation. He was diagnosed as suffering from a cervical sprain and headaches. That shows he has an injury. They can't tell what the injury is immediately after an impact. Sometimes these injuries take a while to manifest themselves. And if they would have ordered an MRI the same day, it would have shown a herniated disc. So from the two doctors, city designated doctors, you have Dr. Lorenz, a board certified orthopedic surgeon. You also have Dr. Franziak, a board certified neurosurgeon. They treated this individual on a conservative basis for a period of time with physical therapy, with pain medication until a point in time came where those conservative treatments failed and they performed the surgery in November. Another doctor that said this was a causally connected situation was Dr. Lazar. He was also an IME doctor. And even Dr. Graf said this was a causally connected accident. He disagreed with the need for the surgery, but that's fine. He could have. The problem that I see in this situation is the arbitrator moved from being an umpire in this case and calling balls and strikes, if you will, or calling someone out or safe. The arbitrator moved in and actually threw the ball, hit the ball, ran the bases, and ran around the whole place for the employer of the spine. One of the doctors in this case suggested that your claim should be referred to the fraud unit of the Workers' Compensation Commission. I saw that, and I can say the same thing about that doctor. What business does he have to make an opinion about malignant? What business does he have to make an opinion concerning something that's not within his scope? He's not a psychologist or psychiatrist, yet he's given the arbitrator psychological and psychiatric principles. He has no right to do those. He has no educational basis to make those kinds of statements. What is he looking at? He says nobody told him, told anybody about a preexisting car accident. The car accident happened, and all the medical bills were paid through the city's group health insurance. There's nothing that was hidden here. There's no mystery anywhere. Which date of accident are we talking about? Are we talking about May 18th or are we talking about August of 2012? Well, May 18th is the car accident and truck where Mr. Seska was working. Earlier in the year, in February of 2011, he had an unrelated car accident in his private vehicle. All he had was chiropractic care, nothing other than an X-ray, which showed nothing, no MRIs, no CAT scans, nothing that showed he had a serious injury, because the chiropractor didn't refer him out to anybody. The commission determined that his accident on May 18th, 2011, aggravated the preexisting conditions to his neck, correct? That's true, and that was based upon all the records. So you have no dispute with that, do you? Absolutely not. So let's go to August 27, 2012, right? That's an issue here, isn't it? August 27, 2012. Oh, that's the accident, yes, that's correct. He's driving over potholes and speed bumps while he's on the job, right? That's correct. Okay. Here's your problem. The commission didn't believe him. They didn't believe his testimony. They said he was gaming the system. So what are we supposed to do with that if they don't find your client credible? I think that you have to disregard, again, this is a statement made by Dr. Graff, and Dr. Graff is not a psychologist or psychiatrist, and I think it needs to be disregarded. When you compare that to, really, the smoking gun in this entire case, you can disregard everything everybody says except for one thing. You have two doctors who are boldly certified. That's Lorenz, and then there's also Dr. Frazier. Opened this man's neck up, did surgery on him, and guess what they found? A herniated disc. Now, none of the other doctors hired by the respondent could testify to that matter because they didn't look at them. Let's set that aside here. That's the most important factor in the case. No, because you're going to take apart the credibility of the doctors, but let's talk about what your claimant said and did in this case. He presented himself to the emergency room at Hinsdale Hospital August 22, 2012, correct? True. The emergency room records do not reference any work-related injury occurring that same day at all. Rather, the claimant attributed his neck pain to an old injury in May 2011. The hospital records note the claimant said he was upset because he was forced back to work and was able to take the pain meds. He doesn't say anything about having any injury that day. According to the hospital records, now you could say the doctors are biased. Is the hospital biased too? I'm not arguing with you. I mean, the man is not a careful historian of all of the facts except the most important ones. And he worked that day, left work, and this was following a surgery. He had the surgery in November of 2011. Again, we have an injury. There's no dispute about this car accident taking place in May of 2011. Right, and the commissioner found it in his favor. Right. But the question that I'm troubled with as far as the arbitrator is concerned is the arbitrator has required a higher standard of proof. We always worked under the standard of preponderance of evidence, which means you prove the case by 50.1. Why are we hung up on the arbitrator? The commission makes the findings. The commission said there was no medical records to support the claimant having any accident or injury driving around that day. Well, if you look at what the commission did, they didn't really carefully make a decision on the case. They just essentially rubber stamped the arbitrator. It was a one-page decision that they just basically adopted. It still becomes the commission's decision. I understand that. They adopted it and they affirmed it, so everything in it is theirs. That's fine, but they didn't make any specific special findings. Yeah, they did. They said he was gaming the system. He didn't have an accident on August the 27th. That's pretty specific. How do you define gaming the system? There's no proof that he gamed the system. This is a career employee in the city of Chicago with 16 years of experience. He's five, eight years away from getting a full-time pension. There's no logical reason why this man would game the system. Is there anybody in this courtroom here today that would go under a surgery that wasn't necessary? It's preposterous for the arbitrator to say that he's gaming the system. What benefit would he get? The two city doctors examined the MRI films and determined that they did not show a herniated disc. They said that they showed protrusions. Dr. Franczak never even bothered to look at the film. All he did was read the radiologist's report. Justice Hoffman, we all know that there's a fine line between what one doctor interprets as a protruding disc and another who interprets that to be a herniated disc. If you put five doctors in this room right now, they all come up with a different opinion. Does that mean that they're crazy or incompetent? It just means no. No, it means that the commission has to determine which of the two competing medical opinions they choose to believe. And they chose not to believe Franczak and Moran's. After the surgery? I mean, that's when the two doctors who have a medical obligation, an ethical obligation, a legal obligation, not to perform a surgery that's not necessary. Can you compare that to... By the way, both city doctors said that operation was not necessary. They both testified it was not necessary. And has anybody brought Lorenz or Franczak up on charges for fraud? Counsel, that's no answer to my question. My question is, does the commission have the right to rely upon the opinions of those two doctors that this operation was, number one, not necessary, and that he never had a herniated disc? Two doctors have stated it. They could rely on that. But my job here is to try to persuade you with reason and logic that it should be overturned. And the other reasons why I think it should be overturned is, number one, you have a valid FCE report. Number two, you have a valid vocational rehabilitation report. But more importantly, when we look at the reasons why arbitrator Kelmanson came to the conclusion that she did, what does she rely on? She says, there's no police report. Well, why do we need a police report? Counsel was nice enough to stipulate that this was an accepted accident. Counsel was also nice enough to accept not only the accident, but notice, why do I need a police report? Arbitrator Kelmanson, if you look at the totality of the circumstances, she is overreaching. The other thing that she says on North Lakeshore Drive, drove him for a drug test and then drove him after he completed that drug, he passed the drug test, by the way, and drove him to Mercy Hospital. Did she miss the entire testimony? And again, there was no correspondence, there was no testimony or refute, anything, any of this. So arbitrator Kelmanson is reaching for something, straws for something. I'm not sure what she's reaching for, but it's not in the evidence. And based upon that, she is not clearly reliant on the facts and evidence. The other thing that she says is now she jumps into the shoes of medical doctors. And when we look at the transcript and look at what she says, she says, well, why did anybody order an EMG? That's not her business. She has no right to demand an EMG because she is, first of all, not a licensed medical doctor. None of the other six doctors involved in this case said an EMG should have been performed. So why does she have the right to impose her opinions on the other doctors? So that's another reason why I believe she's overreaching and stepping on her authority. The other thing, too, is, well, why didn't he have some injections, some steroid injections? What's the science behind that? She doesn't say 20% of people recover from injections or 90% of people recover from injections. People have a right to be treated the way they want. Mr. Seska had the right to rely on his treating doctors. His treating doctors did recommend oral steroids. They did not recommend the injection steroids, epidural steroids. Counselor, I don't think you're telling the truth. I am? Thank you. Are you going to reply? I will reply. Thank you. Counselor, you may respond. Thank you. May it please the Court, Counsel. My name is Auxa Grigalunas, hard for me to say sometimes, too, on behalf of the city of Chicago. I'd like to request on behalf of the city of Chicago that the commission's decision be affirmed in all aspects in this case. First, I'd like to address some of the things that Counsel brought up in his oral argument. First, he's arguing about causal relationship, and I think that we've already established that the commission has indeed found causal relationship. They found causal relationship that the petitioner sustained soft tissue injuries to his cervical spine, then an aggravation of his headaches, which was a preexisting condition as well. That's consistent with the medical records with Mercy Works, with the petitioner's chiropractic physician, as well as the independent medical evaluation by Dr. Lazar. Counsel claims that the petitioner was not trying to hide anything from anyone in this case, and I partially will agree with him because we all knew about the previous motor vehicle accident, and that was not denied by the petitioner in his testimony. However, it was hidden by the petitioner because he did not tell Mercy Works about that prior motor vehicle accident in February of 2011. He did not tell Dr. Graff about that prior motor vehicle accident, which caused Dr. Graff's suspicion of the petitioner's credibility. And the main question about the petitioner's credibility arises from that May 20, 2011 date. On that date, the petitioner saw his chiropractor, who he was seeing for his prior injury, and he also saw Mercy Works, who he was seeing for his work injury. To the chiropractor, he stated that his symptoms were improving. This is two days following the work accident. He said his symptoms were improving, his bilateral neck pain was improving, his headaches were improving, his low back pain was improving. He was discharged by his chiropractor two days after the accident due to the fact that there were no examination findings to keep him there. The same day, he went to Mercy Works and claimed that he had pain at the level of 7 to 8 out of 10 due to this work accident. He did not tell Mercy Works at that time that there was a prior motor vehicle accident that he was involved in, or that he told his chiropractor that same day that he was feeling totally fine and was discharged by his chiropractor. This is the reason why Dr. Graff found him to be not credible. This is the reason why the arbitrator found the petitioner to be not credible. Counsel argued about herniations and protrusions. The MRIs and the physicians indicated that there was a protrusion. They found a herniation during the surgery. There's still no indication that there was any impingement on the cervical spine and the spinal canal or neurofibrominal narrowing, which would cause radiating pain. The petitioner had radiating pain into his right arm, allegedly. Dr. Lazar indicated that his disc protrusion was a central protrusion, and therefore the anatomical subjective complaints did not correlate with the objective findings of the MRI. That is why Dr. Lazar found the petitioner to be not credible. He went so far as to say that the petitioner's motivation should be questioned if he did not improve within the next four to six weeks. Counsel also indicated that the arbitrator went too far as to question why the petitioner didn't undergo injections. Well, injections were recommended by Dr. Graff. He indicated that the petitioner is not a surgical candidate and should try epidural steroid injections. So I do not think that the arbitrator was overreaching when she suggested that would have been a way to proceed with treatment in this case. Again, as you all have pointed out already, the standard of review in this case is manifest weight of the evidence, and it is within the purview of the commission to assess the credibility of the witnesses, which I think they have done here. I think that they have backed up their determinations regarding credibility, regarding the petitioner, regarding Dr. Franczak and Dr. Lorenz, as well as Dr. Graff and Dr. Lazar. Specifically, I think I just need to point out that Dr. Lorenz and Dr. Franczak did not have any access to the petitioner's prior medical records regarding his chiropractic treatment for his accident prior to the work accident. They also mischaracterized that accident, indicating that it was a minor, minor accident and he was doing totally fine after that accident. In fact, the medical records and the records do indicate that the petitioner's car was totaled in that previous accident, so I don't understand how it could possibly be a very minor accident. Doctors Lorenz and Franczak did not explain the necessity and reasonableness of their surgery. They did not explain why the petitioner had anatomical complaints of radiating pain into his right arm when he had a central disc protrusion. In fact, counsel does not ever question the credibility of Dr. Lazar's report, and this is the report that the commission relied the most upon. The commission indicated that Dr. Lazar, they put the most weight on Dr. Lazar's report. Dr. Lazar is the doctor who indicated that the petitioner sustained a soft tissue injury with aggravation of his headaches. Dr. Lazar explained why the anatomical complaints or why the subjective complaints did not correlate with the anatomical disc protrusion that was present in his spine. Dr. Lazar also explained that whiplash injuries do not occur at C4-5 because this is not a motion segment, that the whiplash type injuries occur lower in the cervical spine. At this point, counsel has made arguments that Dr. Graf is not credible. The brief is replete with accusations that the arbitrator and Dr. Graf's opinions are not credible and without basis, but I don't find any citations to the record as to why those opinions are not credible or based on the record. So at this point, I would request that this honorable court affirm the commission's decision in this case. I have a few questions first. Sure. Was the question of whether the plaintiff was permanently disabled under an odd-lot theory ever brought up before the commission? I don't think it was, Your Honor. Was the question of whether the plaintiff was ever entitled to vocational rehabilitation services ever brought up before the commission? I don't believe so. And lastly, was there ever a petition for penalties filed against the client? Not that I recall, Your Honor. Okay. Anything else? I believe there is. Thank you, counsel. Thank you. Counsel, you may reply. Justices, let me start out about Dr. Lazar. As good of a doctor as he is, he's not a surgeon. Okay? So he may read the reports, but the people in the churches are the best able to determine when someone needs to have surgery, and that's Little Reds and that's Dr. Franczak. Again, I don't want to keep repeating myself, but that's the smoking gun, and we can dance around it all we want, but there's no record that can say the hernia existed prior to the work injury in May of 2011. There's no record of that. There's no prior MRI. There's no prior x-rays. You know, the case law is pretty clear. If the man is working and he's healthy and he's working in a full-time position without any restrictions before this injury, and then the only thing that takes place is he gets into a rear-end collision after the injury and he's disabled, that's a causative factor. That's a continuation chain that should be really considered. I just can't believe under my wildest imagination why Dr. Little Reds or Dr. Franczak would perform a non-necessary surgery. That's what counsel was suggesting to you, and that's what arbitrator – I just forgot her name. Kelmanson. Sorry about that. By the way, she's no longer in the commission, and I don't know the official reason why. You could speculate why she's not there. Why should we? Pardon? Why should we? You don't have to. Why should we speculate why she's not there? I'm just saying she's not there any longer. Well, you're telling us we could speculate why she isn't there. What should we speculate? What should we interpret from that? Whatever you want. No, we don't get to interpret whatever we want. We get to discuss the facts here. Well, that's what I'm trying to do is discuss the facts, and Kelmanson is relying on things and facts that are not in the evidence. You know, she's saying there was a photograph that's admitted evidence of the damage of the striking vehicle. It was a Jeep. I forgot the year of the Jeep, but there was an extensive amount of damage on the photo. Arbitrator Kelmanson's reply in her opinion was, I would have expected more damage on the Jeep. Again, it seems to me like she's overreaching. When you take into totality of everything I've said, her opinion is contrary and outside of manifest way to the evidence, and I respectfully ask that you consider reversing and remanding the case back. Thank you, Counsel Bowles, for your arguments in this matter. It will be taken under advisement.  Court will stand as adjourned.